IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HERBERT J. WISE,                           )
                                           )
         Plaintiff,                        )
                                           )
         v.                                )
                                           )
UNITED MINE WORKERS OF AMERICA             )        Civil Action 04-1396
HEALTH AND RETIREMENT FUNDS, and A.        )
FRANK DUNHAM, Trustee, MICHAEL H.          )
HOLLAND, Trustee, MARTY HUDSON,            )
Trustee and ELLIOT A. SIEGAL, Trustee,     )
                                           )
         Defendants.                       )

MEMORANDUM ORDER

CONTI, District Judge.

         Pending before the court are cross-motions for summary judgment filed by plaintiff

Herbert J. Wise ("plaintiff") and defendants United Mine Workers of America Health and

Retirement Funds (the "Funds")[1] and the trustees of the UMWA 1993 Benefit Plan (the

---

[1] Plaintiff's complaint does not identify the Funds or the Funds' relationship to the other
defendants.  See Comp. ¶¶ 2-4.  Exhibit A to plaintiff's complaint is the Summary Plan
Description of the 1993 Benefit Plan and describes the Funds as the day-to-day administrator of
the 1993 Benefit Plan:

> The 1993 Plan's day-to-day operations are administered by the
> UMWA Health and Retirement Funds (the "Funds"), the same
> institution that administers the UMWA 1950 Pension Plan, the
> UMWA 1974 Pension Plan, the UMWA Combined Benefit Fund,
> the UMWA 1992 Benefit Plan and the UMWA Cash Deferred
> Savings Plan of 1988.  (The UMWA 1974 Pension Plan is the trust
> which actually employs the staff of the Funds; the 1993 Plan
> contracts with the UMWA 1974 Pension Trust for administrative
> services, as do the other pension and benefit plans which the Funds
> administers.)

Compl., Ex. A at 3.

"Trustees" or the "1993 Benefit Plan Trustees")[2] – Frank Dunham, Michael H. Holland, Marty Hudson, and Elliot A. Siegal – (collectively the Funds and the Trustees are referred to as "defendants").  The cross-motions concern the denial of plaintiff's claim for health benefits.  The central issue in this case is whether the Trustees acted in an arbitrary and capricious manner by denying plaintiff health benefits.

Plaintiff moves for summary judgment (Doc. No. 14) arguing that the Trustees' decision to deny him health benefits was arbitrary and capricious.  Defendants also move for summary judgment (Doc. No. 11) arguing that the Trustees' decision to deny plaintiff health benefits was not arbitrary and capricious because the Trustees acted in accordance with collectively-bargained eligibility requirements.  The court will affirm the Trustees' determination to deny plaintiff health benefits because defendants did not act arbitrarily or capriciously in denying plaintiff health benefits pursuant to the 1993 Benefit Plan guidelines.  The guidelines explicitly state that deferred vested pensioners with less than twenty years of service like plaintiff are not eligible for health benefits and by acting in accordance with the guidelines the Trustees did not violate their fiduciary duties when plaintiff was denied health benefits.

_____

[2]  The Summary Plan Description of the 1993 Benefit Plan provides in relevant part:
        All major policy decisions for the 1993 Benefit Plan are made by the board
        of four trustees who are the plan administrator; this type of administration
        is known as trustee administration.  The duties of the trustees include
        collecting contributions and other funds owed to the 1993 Benefit Plan,
        interpreting the provisions of the plan and investing the assets of the trust.
Comp., Ex. A at 4.

*Factual Background*

**I. Plaintiff's Employment**

Plaintiff worked in signatory "classified employment" in the coal industry for the

Consolidation Coal Company between March 31, 1951, and February 26, 1953.  Joint Statement

of Facts ("J.S.") ¶ 2.   Signatory "classified employment" or signatory "classified service" refers

to work performed in the coal industry under the provisions of the National Bituminous Coal

Wage Agreement (the "NBCWA"),  the collective bargaining agreement that has been negotiated

and signed by the United Mine Workers of America (the "UMWA") and the Bituminous Coal

Operators' Association (the "BCOA") for many years.  Id.

The NBCWAs[3] govern the terms and conditions of employment for miners in signatory

classified employment in the coal industry.  Id. ¶ 3.  The NBCWAs, in addition, provide for

certain pension and retiree health benefits for eligible retired coal miners who meet the eligibility

requirements of the collectively-bargained pension and health benefit plans incorporated into the

NBCWAs.  Id.

Plaintiff was a member of the UMWA during the period that he was employed in

signatory classified service in the coal industry.  Id. ¶ 4.  In 1953 he left signatory classified

service in order to join the United States Army.  Id.  After completing his military service in

1955, plaintiff worked outside of the coal industry for approximately fifteen years before he

returned to signatory classified employment in the coal industry in November 1970 with the

Vesta Mining Company ("Vesta Mining").  Id.   Plaintiff continued to work for Vesta

_____

[3] The plural term "NBCWAs" is used by the parties and by the court because the
agreement has been subject to modification multiple times.

Mining for fourteen years, from November 23, 1970, until January 1984.  Id.  A few months

later, in July 1984, plaintiff briefly was recalled to Vesta Mining for two months before Vesta

Mining laid him off again.  Id.

In February 1985, plaintiff obtained signatory classified employment in the coal industry

with High Tech Collieries ("High Tech").  Id. ¶ 6.  Plaintiff worked for High Tech from

February 1985 until he was laid off in March 1986.  Id.  At the time plaintiff was laid off, he was

53 years old and had a total of approximately 17.25 years of signatory credited service in the coal

industry.[4]  Id.  Following plaintiff's layoff in March 1986, Interstate Thermal Energy Conversion

Corporation ("ITEC") acquired High Tech's coal preparation plant.  Id. ¶ 8.  In light of this

acquisition, ITEC assumed High Tech's obligation to honor plaintiff's panel rights as a laid-off

employee.  Id.

In early June 1993, plaintiff received a letter dated June 10, 1993, to "All Panel Member

Being Considered for Recall" from Mark A. Sharpe, the General Manager of ITEC, that informed

plaintiff "[t]here will be an 8 hour 'Annual Refresher Training Class' . . . on Tuesday, June 15,

1993."  Id. ¶ 9.  Defendants assert, and the letter provides, that this letter notified recipients "[i]f

you are determined eligible for recall your attendance at the class will assist in your ability to

return to work at an earlier date."  See id.; Exhibit to J.S. ("Ex.") 1 at 00198 (June 10, 1993

Letter from Mark Sharpe).  Defendants assert, although plaintiff disputes, that the retraining

_____

    [4]  Under Article XVII of the NBCWA, when a layoff occurs, a signatory employer must
collect completed, standardized forms listing, among other things, the laid off employee's
seniority date, address, telephone number, and the mines to which the employee is willing to be
recalled ("panel forms").  Id. ¶ 7.  These panel forms are then delivered by the employer to the
local union which in turn creates a list, or panel, to be used when the employer has subsequent
job openings.  Id.

offered to plaintiff and other miners on the High Tech panel was both voluntary and unpaid, and that a miner's participation or lack thereof in the voluntary retraining had no effect on a minor's panel rights.  See id.

Plaintiff attended and participated in this voluntary refresher training class.  Id. ¶ 10. Plaintiff did not receive any wages, benefits or other compensation for his attendance.  Id. Plaintiff acknowledges that he did not work in the coal industry following this course.  See id. ¶ 10-11 (Plaintiff disputes that he "was not recalled to work at the mine," but acknowledges that his last classified employment in the coal industry occurred in March 1986 when High Tech shut down); see also J.S. Ex. 1 at 00001-6 (Plaintiff's June 23, 1993 Application) (In space provided to describe the reason he stopped working, plaintiff answered "Mine Shutdown Hytech Collery [sic] shut their facility down."  In addition, plaintiff indicated when listing his employment history on this form that his last employment was with High Tech from February 1985 to March 1986.).

**II. Plaintiff's 1974 Pension Plan Requests**

Plaintiff first applied for a pension from the UMWA 1974 Pension Plan ("1974 Pension Plan") on June 23, 1993.[5]  Id. ¶ 11.  The 1974 Pension Plan was created under the NBCWA and provides pension benefits to eligible coal miners who otherwise meet the 1974 Pension Plan's eligibility criteria.[6]  Id.  At the time he initially applied for a pension from the 1974 Pension Plan

---

[5]   The 1974 Pension Plan is administered by fiduciaries who are obligated to discharge their duties in accordance with documents and instruments governing the 1974 Pension Plan and Trust.  See  J.S. Ex. 3 (1974 Pension Plan document) at  32 ("The Trustees or such other named fiduciaries as may be properly designated shall have full and final determination as to all issues concerning eligibility for benefits.").

[6]   In 1993, the 1974 Pension Plan offered six different types of pension benefits: a) a Normal Retirement Pension; b) an Age 55 Retirement Pension; c) a Disability Retirement Pension; d) a Minimum Disability Retirement Pension; e) a Deferred Vested Pension; and f) a

on June 23, 1993 (eight days after taking the training course), plaintiff indicated that his last classified employment in the coal industry occurred in March 1986 when High Tech shut its facility down.  Id. ¶ 11.   The 1974 Pension Plan trustees, after reviewing plaintiff's application and his work history, determined that he was eligible for a deferred vested pension with an effective date of June 1, 1993, based on his 17.25 years of service in the coal industry.  Id. ¶ 13. The deferred vested pension is:

> [p]ayable to any participant who is not eligible to receive a pension under any other provision whose employment in a classified job with an Employer is terminated for any reason, and who, at the time of retirement has at least 10 years of signatory service, or at least 20 years of credited service.

Id. ¶ 12.[7]  Under the 1974 Pension Plan, "retirement" is defined as the last day that a participant earns credited service, not the day that benefits commence.  Id. n.3; see also J.S. Ex. 3 at 4 (1974 Pension Plan, Article II.B) ("When Retirement Occurs") ("[R]etirement shall be considered to occur on the last day of credited service . . . provided that on such day he was eligible for an immediate or deferred pension under this Plan.").  Plaintiff did not appeal this determination.  Id. ¶ 14.

In 1996, plaintiff, having been awarded deferred vested pension benefits in 1993, applied for a disability pension from the 1974 Pension Plan.  Id.  ¶ 15.  Plaintiff's application was unsuccessful.  See id.; see also J.S. Ex. 1 at 00050 ("Mr. Wise not sure he wants to pursue . . . . He's not sure he would be disabled [from a mining accident] . . . . Hold open for 90 days.  Void if no response in that time.").

---

Deferred Vested Pension-Special.  Id. ¶ 12.

  [7] See Exhibit 3 (1974 Pension Plan document; iteration in effect during 1993)  (noting that in 1993, as a result of a change in the law, the ten-year signatory service requirement was reduced to five years).

In 1999, plaintiff requested that the 1974 Pension Plan award him pension service credit for the two years he had served in the United States Army from 1953 to 1955.  Id. ¶ 16; J.S. Ex. 1 at 00055-57.  Plaintiff's request was denied.  Id. ¶ 17.  On September 28, 1999, the 1974 Pension Plan held a pre-hearing conference at the Washington, Pennsylvania, Field Service Office with plaintiff regarding the denial of pension service credit for his past military service.  Id. ¶ 17; J.S. Ex. 1 at 00055-62.  At this conference, and in the "Decision on Review" that followed, the 1974 Pension Plan representatives explained that, under the terms of the 1974 Pension Plan, a participant must return to classified employment within twelve months after the date of separation from the military to receive pension credit for the military service.  Id.  Plaintiff subsequently appealed this decision and invoked his right to a hearing which was held on January 28, 2000.  Id. ¶ 18; J.S. Ex. 1 at 00056.  After review of plaintiff's application, it was determined on appeal that plaintiff was not eligible for the service credit based upon his military service because he was discharged from the military in March 1955 and had not returned to classified employment within the required twelve-month period, but instead had returned to work approximately fifteen years later in 1970.  Id.

Later in 2000, plaintiff sought to change his 1974 Pension Plan benefit from a deferred vested pension to an age 55 pension based upon his attendance at the ITEC voluntary refresher training class during June 1993.  Id. ¶ 19; J.S. Ex. 1 at 00199 (March 22, 2002 Letter from Kyu W. Lee to Plaintiff).  In late 2001, the trustees of the 1974 Pension Plan concluded that plaintiff was not entitled to an age 55 pension because his last date of credited service in the coal industry had occurred in 1986 when plaintiff was 53 years old.  Id. ¶ 20.  The trustees of the 1974 Pension Plan did not grant plaintiff any service credit for his one day voluntary unpaid retraining with ITEC during June 1993.  Id.;  J.S. Ex. 1 at 00199 (March 22, 2002 Letter from Kyu W. Lee

to Plaintiff).  Plaintiff was notified of the 1974 Pension Plan's decision to deny him an age 55

pension in March 2002.  Id.

### III. Plaintiff's 1993 Benefit Plan Requests

In July 2001, plaintiff sought retiree <u>health</u> benefits from the 1993 Benefit Plan.  <u>Id.</u> ¶ 21

(emphasis added); J.S. Ex. 1 at 00214-16 (Plaintiff's Health Services Card Application).  The

1993 Benefit Plan, created by the 1993 NBCWA, is an employee welfare benefit plan within the

meaning of Section 3(1) of the Employee Retirement Income Security Act of 1974, <u>as</u> <u>amended</u>

("ERISA"), 29 U.S.C. § 1002(1), and was created for the limited purpose of providing health and

other non-pension benefits to retired miners and their dependants and surviving spouses who met

the 1993 Benefit Plan's eligibility requirements.[8]  <u>Id.</u>; <u>see</u> J.S. Ex. 4 (1993 Plan Declaration and

Agreement of Trust).

Under Article XX(10)(h) of the NBCWA, deferred vested pensioners with less than 20

years of service under the 1974 Pension Plan are not eligible for health care benefits under the

1993 Benefit Plan.  <u>Id.</u> ¶ 23.  The agreement, which was the result of collective bargaining,

states:  "Deferred vested pensioners with less than 20 years of service under the 1974 Pension

Plan and miners who will receive a pension of less than 20 years of service under the 1950

Pension Plan are ineligible for health care."  <u>Id.</u> (quoting J.S. Ex. 2 at 183-84) (National

Bituminous Coal Wage Agreement of 1993); <u>see</u> <u>also</u> J.S. Ex. 5 at 196 (National Bituminous

Coal Wage Agreement of 2002) (same provision set forth in the 2002 version of the agreement).

On July 26, 2001, plaintiff submitted his application for retiree health benefits from the

_____

[8] The 1993 Benefit Plan's eligibility requirements are set forth in Article XX of the 1993
NBCWA and in the Trust Agreement for the 1993 Benefit Plan.  <u>See</u> J.S. Ex. 2 (National
Bituminous Coal Wage Agreement of 1993, Article XX, Section (c)(3)(ii)) at 147-148; Exhibit 4
(United Mine Workers of America 1993 Benefit Plan Agreement and Declaration of Trust).

1993 Benefit Plan.  Id. ¶ 25; see J.S. Ex. 1 at 00214-6.  On August 26, 2002, the 1993 Benefit

Plan informed plaintiff that his application for health benefits had been denied because

"pensioners receiving a deferred vested pension with less than 20 years of credited service are not

eligible for health benefits coverage."  Id. ¶ 26 (quoting J.S. Ex. 1 at 00212) (August 26, 2002

Letter from Shannon Giddens to Plaintiff).   Plaintiff timely appealed that decision and requested

a hearing.  A hearing was held on September 25, 2003.  Id. ¶ 27.  On October 20, 2003,

plaintiff's appeal was denied by the 1993 Benefit Plan.  Id. ¶ 28.  The rationale for that denial

was that plaintiff's deferred vested pension was based on his 17.25 years of classified signatory

service in the coal industry and that under the terms of the 1993 Benefit Plan, pensioners

receiving a deferred vested pension with less than twenty years of credited service are not eligible

for health benefit coverage from the 1993 Benefit Plan. Id.  In this action, plaintiff appeals the

determination of the 1993 Benefit Plan that he is not entitled to health benefits.  See Compl. ¶¶

10-12, 24.


### Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if,

drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." FED.R.CIV.P. 56(c).  A motion for summary judgment will not be defeated by the

mere existence of some disputed facts, but will be defeated when there is a genuine issue of

material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  In determining

whether the dispute is genuine, the court's function is not to weigh the evidence or to determine

the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249. The court may consider any material or evidence that would be admissible or usable at trial in deciding the merits of a motion for summary judgment. Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993) (citing WRIGHT AND MILLER, FEDERAL PRACTICE § 2721); Pollack v. City of Newark, 147 F.Supp. 35, 39 (D.N.J. 1956), aff'd, 248 F.2d 543 (3d. Cir. 1957), cert. denied, 355 U.S. 964 (1958) ("in considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or *otherwise made admissible in evidence*.") (emphasis added).

### Discussion

## I.     The "Arbitrary and Capricious" Standard of Review

The crux of this civil action concerns section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), which authorizes individuals to recover benefits due under an employee benefit plan. Plaintiff alleges that defendants by refusing him health benefits violated 29 U.S.C. § 1132(a)(1)(B). Compl. ¶¶ 15-16. The parties do not dispute, and the court agrees, that the court will review plaintiff's denial of benefits pursuant to an arbitrary and capricious standard of review. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

In Firestone, the United States Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone, 489 U.S. at 115. If the administrator has discretionary

power, "[t]rust principles make a deferential standard of review appropriate" and "the trustee's interpretation will not be disturbed if reasonable." Id. at 111; see also Romero v. Smith-Kline Beecham, 309 F.3d 113, 118 (3d Cir. 2002); Mitchell v. Eastman Kodak Co., 113 F.3d 443, 437 (3d Cir. 1997). If the administrator has discretionary power, courts are to apply an arbitrary and capricious standard of review. See id.

According to the United States Court of Appeals for the Third Circuit, this standard is "essentially the same as the 'abuse of discretion' standard." Abnaytha v. Hoffman-LaRoche, Inc., 2 F.3d 40, 45 n.4 (3d Cir. 1993). The court of appeals further stated with respect to the "arbitrary and capricious" standard:

> [A]n administrator's decision will only be overturned if it is "without reason, unsupported by substantial evidence, or erroneous as a matter of law . . . . [T]he court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits."

Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 387 (3d Cir. 2000) (quoting Pinto v. Reliance Std. Life Ins. Co., 156 F.3d 1225 (3d Cir. May 28, 1998)(No. 97-5297) (an earlier unpublished opinion)).

In this case, the parties do not dispute that an arbitrary and capricious standard of review applies. The court agrees. Under the terms of the 1993 Benefit Plan, the Trustees have discretionary authority to determine eligibility:

> Subject to the provisions of this Trust and the Plan, the Trustees shall have full and exclusive authority and discretion to determine all questions of coverage and eligibility, including all factual determinations, investments of trust funds, delivery of benefits, and all other related matters. They shall have full discretionary power to construe the provisions of this Agreement and Declaration of Trust and the Plan.

J.S. Ex. 4 (1993 Benefit Plan) at 3.  The court, therefore, will apply an arbitrary and capricious standard of review to defendants' denial of plaintiff's claim for health benefits under the 1993 Benefit Plan.

## II. The Relationship between the 1974 Pension Plan and the 1993 Benefit Plan

Plaintiff's claims before the court primarily involve the denial of health care benefits under the 1993 Benefit Plan.  See Compl. ¶ 15-17; J.S. ¶ 26, 28.  Eligibility for health care benefits under the 1993 Benefit Plan, however, depends in part upon pension status determined under the provisions of the 1974 Pension Plan by the 1974 Pension Plan's trustees.  See J.S. Ex. 2 (1993 NBCWA) at 183-84 ("Deferred vested pensioners with less than 20 years of service under the 1974 Pension Plan . . . are ineligible for health care."); see also J.S. Ex. 5 (2002 NBCWA) at 196.   Plaintiff here, in arguing that he is entitled to health benefits under the 1993 Benefit Plan, attempts to attack collaterally his deferred pension status under the 1974 Pension Plan.  Plaintiff's claims challenging his deferred pension status under the 1974 Benefit Plan, however, are misplaced.

Plaintiff's request for health benefits was made pursuant to the 1993 Benefit Plan and was handled by its Trustees and not the 1974 Benefit Plan and its trustees.[9]  Specifically, on July 26, 2001, plaintiff applied for health benefits from the 1993 Benefit Plan.  J.S. ¶ 25.; J.S. Ex. 1 at 0214-16 ("Health Services Card Application").  On August 26, 2002, plaintiff received a letter from a program specialist at the central office of the Funds notifying him that his application had

---

[9]  Named as individual defendant Trustees in plaintiff's Complaint are the Trustees of the 1993 Benefit Plan, not the Trustees of the 1974 Benefit Plan.  See Def.s' Opp. to Pl.'s Mot. for Sum. Judg. (Doc. 16) at 1; Pl.'s Br. in Supp. of Cross-Mot. For Sum. Judg. at 1.

been denied.  Id. ¶ 26; J.S. Ex. 1 at 212.[10]   Plaintiff timely requested a hearing concerning this

denial.  Id. ¶27; J.S. Ex. 1 at 00211 (hearing request form).

A prehearing conference concerning the denial of benefits was held by telephone on May

22, 2003.  J.S. Ex. 1 at 00206-10.  At that time, a prehearing counselor advised plaintiff that he

was not eligible for health benefits due to his pension status, noting later that she was "[u]nable

to provide any instructions to alter the denial of [health] benefits" due to plaintiff's pension

status.  J.S. Ex. 1 at 00206-7 (summary of prehearing conference prepared by prehearing

counselor).   The prehearing counselor also noted in her summary that, because plaintiff did not

appeal his deferred vested pensioner status in 1995, the Funds would not address his pension

benefits during the health benefits appeal process.  Id.

On September 25, 2005, a telephonic hearing was held.  J.S. ¶27.  On October 20, 2003,

plaintiff was notified his appeal was denied pursuant to the terms of the 1993 Benefit Plan.  Id. ¶

28, J.S. Ex. 1 at 00201.  The letter enclosed documents related to the appeal which include a

"Decision on Review" prepared by a hearing officer which stated:  "His application was denied .

. . because 'Funds' pensioners receiving a deferred vested pension with less than 20 years of

credited service are not eligible for health benefits coverage.'"  J.S. Ex. 1 at 00201-2; J.S. ¶ 28.

This letter and the "Decision on Review" constituted the final determination by the 1993 Benefit

Plan.  See J.S. ¶ 25-28.  This civil action challenging the denial of health care benefits followed.

See Comp. ¶ 15-17.

---

[10]The record also contains a virtually identical letter dated November 16, 2001, notifying
plaintiff his application had been denied.  J.S. Ex. 1 at 0213.  This letter is from the same
program specialist but it does not have the letterhead of the Funds.  Id.  The parties do not refer
to this letter in their Joint Statement of Facts.

In his motion for summary judgment, plaintiff does not explicitly deny that these determinations were made by the 1993 Benefit Plan and its Trustees, but at times implies that the 1974 Benefit Plan trustees and not the 1993 Benefit Plan Trustees were responsible.  See Pl.'s Mot. at 2 ("The *1974 Benefit Plan's decision* to deny Mr. Wise benefits is unsupported by the factual record . . .") (emphasis added).  The 1974 Benefit Plan, however, was merged out of existence into the UMWA Combined Benefit Fund during 1992 under section 9702(a)(2) of the Coal Industry Retiree Health Benefit Act of 1992 ("Coal Act"), 26 U.S.C. § 9702(a)(2).[11]  See Def.s.' Opp. to Pl.'s Mot. for Sum. Judg. at 3; Ex. 4 thereto.  Upon passage of the Coal Act, BCOA and the UMWA subsequently created the 1993 Benefit Plan to provide health benefits to otherwise eligible retirees who were not covered by the Coal Act.  J.S. ¶ 26.  Because the 1993 Benefit Plan, through its Trustees (named as defendants here), was the entity that denied plaintiff's application for health benefits which is at issue in this civil action, the 1993 Benefit Plan's terms govern plaintiff's health care requests including the claim before this court. Plaintiff cannot collaterally attack the determination of his pension status by the trustees of the 1974 Pension Plan in this lawsuit, which focuses on whether the decision of the Trustees of the 1993 Benefit Plan was arbitrary and capricious.

## III. Denial of Plaintiff's Claim for Health Benefits Under the Arbitrary and Capricious Standard

As noted above, if the 1993 Benefit Plan authorizes the administrator or fiduciary discretionary authority to determine benefit eligibility or to construe the terms of the plan, the

---

[11]In a response to disputes between coal workers and their employers regarding rising health care costs, Congress passed the "Coal Act" which guaranteed that lifetime health care would be provided to more than 100,000 retired coal miners and their dependents.  See 26 U.S.C. § 9711(b)(1). This guarantee covered miners who had met the age and service requirements for retirement as of February 1, 1993, and retired by September 30, 1994. Id.

court is to apply an arbitrary and capricious standard of review.  Firestone, 489 U.S. at 115.

Also, as noted above, the 1993 Benefit Plan gives the Trustees discretionary authority to

determine eligibility and to construe the terms of the Plan Agreement.  J.S., Ex. 4 (1993 Benefit

Plan and Trust Agreement) at 3.   The Trustees, specifically, are required to apply the eligibility

requirements contained in Article XX of the NBCWA, "including all restrictions set forth in the

General Description of the Health and Retirement benefits of such Article."  Id. at 6 (Article

IX(1)(A)).  Under Article XX(10)(h) of the NBCWA, deferred vested pensioners with less than

20 years of service under the 1974 Pension Plan are ineligible for health care.  J.S. ¶ 23; J.S., Ex.

2 at 183-84 ("Deferred vested pensioners with less than 20 years of service under the 1974

Pension Plan and miners who will receive a pension of less than 20 years of service under the

1950 Pension Plan are ineligible for health care").   It is undisputed in this case that plaintiff was

awarded a deferred vested pension from the UMWA 1974 Pension Plan, and that he had less than

20 years of credited service in the coal industry.  See J.S. ¶ 6; Exhibit 1 at 00019-20.

        The 1993 Benefit Plan Trustees, after reviewing plaintiff's request for health benefits,

informed him that he did not qualify under the 1993 Benefit Plan's requirements.  See J.S. Ex. 1

at 00212; J.S. ¶ 26 (noting that plaintiff's deferred vested pension was based on his 17.25 years

of classified signatory service in the coal industry, and that under the terms of the 1993 Benefit

Plan, pensioners receiving a deferred vested pension with less than twenty years of credited

service were not eligible for health benefit coverage from the 1993 Benefit Plan).  Plaintiff's

appeal of this decision was denied for the same reason.  See Exhibit 1 at 00201-07; J.S. ¶ 28.

        The determination of the 1993 Benefit Plan Trustees, therefore, was not arbitrary or

capricious because it was a determination compelled by a strict application of the eligibility

conditions set forth in the 1993 Benefit Plan.  The evidence of record shows that, even granting

inferences in favor of plaintiff, the non-moving party on this issue, defendant is entitled to

summary judgment.  Plaintiff's remaining arguments are unavailing because the undisputed

material facts of record warrant a finding that the 1993 Benefit Plan Trustees' decision to deny

plaintiff health care benefits was not arbitrary or capricious.

**IV. Eligibility for an "Age 55 retirement" Pension**

Plaintiff argues that defendants failed to consider evidence suggesting that he was entitled

to receive an enhanced age 55 retirement pension from the 1974 Pension Plan that would have

rendered him eligible for health benefits from the 1993 Benefit Plan.[12]  Plaintiff claims that the

denial of his age 55 retirement pension request constituted "arbitrary and capricious" behavior.

As a threshold matter, this court must determine whether plaintiff can collaterally attack his

deferred vested pension status under the 1974 Pension Plan by appealing his health benefit denial

under the 1993 Benefit Plan.

The 1993 Benefit Plan Trustees did not act arbitrarily or capriciously in denying plaintiff

access to the age 55 pension because the Trustees have authority to make decisions regarding

health benefits and have no authority to alter or overrule the pension determinations made

pursuant to the 1974 Pension Plan by its trustees.  See J.S. Ex. 4 (1993 Benefit Plan Declaration

and Agreement of Trust).  The 1993 Benefit Plan Trustees also have no authority to deviate from

the 1993 Benefit Plan's collectively-bargained eligibility provisions.  Bauer v. Summit Bancorp,

325 F.3d 155, 160 (3d Cir. 2003) (noting that ERISA plan generally must be enforced as written)

(citations omitted).  As defendants correctly note, plaintiff may wish that he had been awarded an

age 55 Pension from the 1974 Pension Plan  – a separate plan administered by a different set of

---

[12]  As noted above, although plaintiff refers to the 1974 Benefit Plan in his motion, the
factual record indicates that he appropriately applied for health care benefits through the 1993
Benefit Plan.  J.S. ¶ 21.

trustees (two of the four of whom are different individuals than those named as individual

defendants in this case).  Plaintiff, however, was determined by the 1974 Pension Plan trustees to

be ineligible for this enhanced pension benefit in May 1995.  He did not timely appeal that

determination.  His later attempts to alter his 1974 pension status through procedures dealing

with the 1974 Pension Plan and its trustees were unsuccessful.

Moreover, even if the 1993 Benefit Plan Trustees could alter plaintiff's deferred vested

pension status under the 1974 Pension Plan, plaintiff's argument still fails.  Plaintiff contends

that his attendance at the voluntary refresher course qualifies him for the age 55 retirement

pension from the 1974 Pension Plan.   Plaintiff  argues that because he attended this voluntary

refresher course, which he argues constitutes "credited service" for the purposes of the 1974

Pension Plan, and was over the age of 55 at the time he took the course, he satisfied the age

requirement of that plan.  Plaintiff cites Article I(A)(9) which provides that "Credited Service" is

defined as "signatory and nonsignatory service determined pursuant to Article IV," and Article

IV, which requires that that service for purposes of tacking on service years must be with

"employers in the bituminous coal industry."  J.S., Ex. 3 at 3, 18-19.  Plaintiff also argues that his

training service with ITEC counts towards the 1974 age 55 retirement plan because ITEC is a

"successor in interest" to High-Tech and successors in interest are obligated to provide benefits

for retirees pursuant to 26 U.S.C. § 9711.  Id. at 5-6.

Plaintiff's contentions, however, are unavailing.  Defendants refer to a minimum hours

requirement which plaintiff overlooked:  Even if the 1993 Benefit Plan Trustees had authority

over pensions and were authorized in making his health benefits determination to consider his

pension argument that his "retraining" constitutes credited service that entitles him to an age 55

pension, plaintiff could not satisfy the requisite hours requirement for the age 55 pension that he

seeks.  Both parties agree that the material qualifications for an age 55 retirement pension are:

> Age 55 Retirement: Payable to any Participant who has at least 10
> years of signatory service or at least twenty years of credited
> service and has attained the age of 55 years prior to retirement, but
> not the age of 62.  Under the Plan's eligibility requirements, an
> applicant for an Age 55 pension must work at least 250 hours after
> turning age 55 to be eligible for this benefit.

J.S. ¶ 12(b).  The evidence of record demonstrates that plaintiff did not satisfy the 250-hour

requirement which is a condition of an age 55 retirement pension.  Even if plaintiff's training

attendance constituted employment for purposes of tacking on years of classified signatory

service, the evidence of record shows that plaintiff did not work for 250 hours during the training

session or shortly thereafter.  See J.S. ¶ 9-10.

In addition, defendants note that the reasonableness of the 250-hour work requirement

recently was affirmed by the United States Court of Appeals for the Third Circuit in Lacko v.

Brennan, No. 04-1279, 2005 WL 715677 (3d Cir. March 30, 2005) (affirming a district court's

enforcement of an arbitrator's denial of age 55 pension to deferred vested pensioner who was

recalled to mine site and only worked two weeks after turning age 55).  The arbitrator that

initially decided the deadlock over the pension application of James Lacko noted that Article IV

B(1)(b) of the 1974 Pension Plan provides that a classified employee who has 249 or fewer

"Hours of Service" does not earn any credited service for that year.  See In re: Deadlock

Arbitration over Pension Application of James Lacko, AAA Case No. 16 620 00368 02 (2003)

(Javits, Arb.).  Thus, even if plaintiff's training constituted "classified service," which would

normally be credited to the last day on which he was an employee in a classified job for an

employer, id. at 13 (citing Article IV C(8) of the 1974 Pension Plan), he still cannot be found to

have earned any credited service for the voluntary training course he attended in 1993.  Id. at 15.

Moreover, on June 23, 1993, only four days after this retraining session took place, plaintiff applied for a pension from the 1974 Pension Plan.  See J.S. Ex. 1 at 00001-6.  Plaintiff stated in his application that his last employment in the coal industry had occurred in 1986.  Id. at 0003.  The 1974 Pension Plan awarded plaintiff a deferred vested pension – not an age 55 pension.  See Id. at 00019-20.  Plaintiff did not appeal this pension determination after it was made in May 1995.  J.S. ¶ 14.  Plaintiff, in order to preserve his right to appeal this determination, should have appealed this decision before the 90-day appeal period expired but instead waited until May 2003.  See J.S. Ex. 1  at 00207 (stating that because "Mr. Wise did not appeal the type of pension issued at that time and the 90 day appeal period expired in August 1995; . . . the Funds will not address Pension Benefits during [the 2003 appeal process]").

Plaintiff did not qualify for health benefits under the terms of the 1993 Benefit Plan because he cannot satisfy the Plan's eligibility requirements.  As explained above, plaintiff was only a deferred vested pensioner with less than twenty years of service in the coal industry, which rendered him ineligible for health benefits under the terms of the 1993 Benefit Plan.  The 1993 Benefit Plan Trustees' denial of his claim, therefore, was not arbitrary or capricious because the Trustees acted in accordance with the 1993 Benefit Plan's collectively-bargained eligibility criteria.

**III.  Alleged Breach of Fiduciary Duty by Trustees**

Plaintiff argues that by not providing him health benefits, the Trustees are in breach of their fiduciary duties pursuant to 29 U.S.C. § 1104(a).  As a matter of law, however, the Trustees of the 1993 Benefit Plan cannot abuse their discretion when they make eligibility determinations according to the 1993 Benefit Plan's collectively-bargained eligibility requirements.  United Mine Workers of Am. Health & Ret. Fund v. Robinson, 455 U.S. 562, 574-75 (1982) (federal

courts are not authorized to review for reasonableness the provisions of a collectively-bargained

agreement concerning a benefits plan; absent conflict with federal law, trustees breach no

fiduciary duties in administering benefits in accordance with terms established through collective

bargaining).   Although <u>Robinson</u> involved the Labor Management Relations Act, it applies to

actions brought under ERISA as well.  <u>Id.</u> at 575; <u>White v. Distrib. Ass'n Warehousemen's</u>

<u>Pension Trust</u>, 751 F.2d 1068, 1071 (9th Cir. 1985) ("The plaintiff has suggested no reason why

<u>Robinson</u>'s principle should become inapplicable merely because a lawsuit is brought under

ERISA rather than Taft-Hartley.").

 The <u>Robinson</u> doctrine applies not only to eligibility requirements created through

collective bargaining, but also to trustees' application of those provisions.  <u>See</u> <u>Dist. 2, United</u>

<u>Mine Workers of Am. v. Helen Mining Co.</u>, 762 F.2d 1155, 1159-60 (3d Cir. 1985) ("Although

the challenge in <u>Robinson</u> was to a benefit provision rather than to its application by trustees, it is

clear that the Court's analysis is apposite to judicial review of action by Trustees administering

provisions of the plan established pursuant to a collective-bargaining agreement.").  The United

States Court of Appeals for the Third Circuit further stated in <u>Helen Mining</u>:

> we believe that it follows from <u>Robinson</u> that when the trustees
> have consistently and literally followed an unambiguous benefit
> eligibility requirement that was bargained for and that was set forth
> in an employee benefit plan, that action cannot be called arbitrary
> and capricious by a court unless enforcement would violate federal
> law or policy.

<u>Id.</u>  at 1160.  Because the Trustees of the 1993 Plan followed the collectively-bargained

eligibility requirements explicitly directing that deferred vested pensioners with less than twenty

years of credited service were not eligible for health benefits and there is no question raised

concerning whether that provision violated federal law or policy, defendants cannot be in breach

of their fiduciary duties.  See J.S.  ¶ 28.

### Conclusion

The only two legal issues before the court are whether defendants' denial of plaintiff's request for health benefits under the 1993 Benefit Plan withstands the arbitrary and capricious standard of review and whether the defendant Trustees of the 1993 Benefit Plan breached their fiduciary duties.  As discussed above, the relevant facts pertaining to these legal issues are undisputed.  Defendants are entitled to summary judgment as a matter of law because they did not act arbitrarily or capriciously in denying plaintiff health benefits pursuant to the 1993 Benefit Plan guidelines and because the 1993 Plan Trustees did not violate their fiduciary duties.

### Order

**AND NOW**, this 18th day of September, 2006, upon consideration of the evidence of record and the parties' arguments and supporting documents, **IT IS ORDERED** that the motion for summary judgment filed by defendants (Doc. No. 11) is **GRANTED**.  In light of the court's ruling, plaintiff's cross-motion for summary judgment (Doc. No. 14) shall be **DENIED**.

Summary judgment is granted in favor of defendants United Mine Workers of America Health and Retirement Funds, A. Frank Dunham, Trustee, Michael H. Holland, Trustee, Marty Hudson, Trustee, and Elliot A. Siegel, Trustee, and against plaintiff, Herbert J. Wise.

The clerk shall mark this case closed.

By the Court:

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

_____

cc:     Counsel of Record